IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:20-cr-00118 |
| vs. | : | JUDGE NEWMAN |
| GERALD KILGO, | : | |
| Defendant. | : | |

### UNOPPOSED EMERGENCY MOTION FOR ORDER REDUCING SENTENCE TO TIME SERVED PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Gerald Kilgo, through undersigned counsel, respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Kilgo submits that he has a terminal illness as that term is defined 18 U.S.C. § 3582(d) and USSG §1B1.13 and that there are extraordinary and compelling reasons which justify his release. Counsel requests an order reducing his sentence to time served and directing the Bureau of Prisons to release him immediately.

Assistant United States Attorney Nick Dingeldein does not oppose this Motion.

### STATEMENT OF FACTS

On November 24, 2021, Mr. Kilgo was sentenced to 24 months in prison for a non-violent drug offense. This Court found that Mr. Kilgo qualified for the safety valve, and additionally granted Mr. Kilgo voluntary surrender based on his successful term of pretrial supervision. Mr. Kilgo has served over 50% of the sentence this Court imposed, and his current out date is currently scheduled for late this year.

In November of 2022, Mr. Kilgo had a seizure and was transported to the Federal Medical Center in Lexington. Mr. Kilgo's condition deteriorated and he was transported to the University of Kentucky for emergency brain surgery. Surgeons discovered a brain tumor and attempted to remove it on November 23, 2022. Unfortunately, the brain tumor was determined to be a grade 4 astrocytoma. (*See* Exhibit 1). "Astrocytoma grade IV (glioblastoma multiforme) is the most common and most malignant tumor of the central nervous system and is currently noncurable."[1] Grade 4 astrocytoma, also referred to as glioblastoma,[2] is a rapidly growing tumor that commonly spreads throughout the brain.

> Glioblastoma is an aggressive and devastating cancer, that can result in death in as little as 15 months after diagnosis. The long term prognosis for glioblastoma remains poor. The current standard of care consisting of surgery, chemotherapy, and radiation, is not very effective… Surgery alone is not enough for glioblastoma as these tumors are very invasive in nature. These tumor cells invade surrounding brain tissue, making it nearly impossible to ever remove the tumor entirely… Present treatments for glioblastoma are unlikely to result in prolonged survival for most patients. Most patients do inquire about clinical trials.[3]

For Mr. Kilgo to have even the slightest chance of survival, participating in an experimental clinical trial appears to be his only realistic hope. If he remains in custody, his sentence will very likely amount to a death sentence.

On December 9, 2022, Mr. Kilgo made a request for compassionate release to the David LeMaster, Warden of FCI Ashland. (*See* Exhibit 2). On December 22, 2022, the Warden denied Mr. Kilgo's request. (*See* Exhibit 3). Mr. Kilgo has since been transferred to FMC Butner, apparently because FCI Ashland was not equipped to treat Mr. Kilgo with the necessary chemotherapy and radiation.

---

[1] https://pubmed.ncbi.nlm.nih.gov/23791210/
[2] https://www.cancer.gov/publications/dictionaries/cancer-terms/def/grade-iv-astrocytoma
[3] https://glioblastomafoundation.org/patients/glioblastoma-brain-tumor-information

**BACKGROUND**

**A. Compassionate Release Before the First Step Act**

On December 21, 2018, the President signed into law the First Step Act, which, among other things, made significant changes to the statute governing compassionate release, 18 U.S.C. § 3582(c)(1)(A)(i). The statute was first enacted as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" to enable judges to re-assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983).

The compassionate release statute empowers courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission ("Commission") the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). In 2007, more than two decades after the statute was enacted, the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, comm. n.1(A).

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the Bureau of Prisons. But, during the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. *See, e.g.*, Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at *https://oig.justice.gov/reports/2013/ e1306.pdf* ("The BOP does not properly manage the

compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."); Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at *https://oig.justice.gov/ reports/2015/e1505.pdf#page=1* ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."); U.S.S.G. § 1B1.13, n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).

### B. Compassionate Release After the First Step Act

Through the First Step Act, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The compassionate release statute, as amended by the First Step Act, authorizes courts to grant relief whenever "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) and applicable policy statements issued by the Commission—regardless of the BOP's position. Thus, courts no longer need to await a motion from the BOP, which tended to limit "extraordinary and compelling" circumstances to cases where the defendant suffered from a terminal illness. Instead, courts may amend a sentence "upon motion of the defendant" after he has exhausted administrative remedies with the BOP, or after 30 days following the warden's receipt of a compassionate release request, whichever comes first. 18 U.S.C. § 3582(c)(1)(A).

Considering the First Step Act's objective to increase courts' flexibility to grant compassionate release and minimize the BOP's role in the process, courts are no longer constrained by the BOP's determination of when relief is warranted. This is because those portions of the Commission's policy statement delegating to the BOP Director the power to decide what

4

are "extraordinary and compelling reasons" are in conflict with the amended statute. *See, e.g.*, *United States v. Cantu*, 2019 WL 2498923, at *3-4 (S.D. Tex. June 17, 2019) (vesting BOP with authority to determine whether extraordinary and compelling reasons are present "no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court"); *United States v. Ebbers*, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts. Deferring to the BOP would seem to frustrate that purpose.").

## ARGUMENT

### A. Mr. Kilgo's Grade 4 Brain Cancer Gives Rise to Extraordinary and Compelling Reasons that Justify Compassionate Release

The Warden determined that Mr. Kilgo did not meet the criteria for compassionate release, because with treatment he has "a life expectancy of several years." The basis for this alleged prognosis is unclear, as the warden does not provide any citation or quotation to the supposed comprehensive medical evaluation, but based on Mr. Kilgo's diagnosis provided by the UK HealthCare Laboratories (Exhibit 1) and readily available information online, this prognosis appears to be erroneous. (*E.g.*, s*ee* footnotes 1-3, *supra*).

Even still, in denying Mr. Kilgo's request, the Warden ignored the BOP's own "Program Statement" regarding compassionate release, which acknowledges that section 603(b) of the First Step Act, codified at 18 USC § 3582, modified the definition of "terminally ill." *See* Bureau of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The Program Statement provides that "[reduction in sentence] consideration may be given to inmates who have been diagnosed with a

terminal, incurable disease and whose life expectancy is eighteen (18) months or less, *and/or* has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1)." *Id.* (Emphasis added).

Mr. Kilgo submits that he has a "terminal illness" as that term is defined in 18 U.S.C. § 3582(d). Although Mr. Kilgo has not been given a definitive life expectancy, his grade 4 astrocytoma is a disease with an end-of-life trajectory. *See also* USSG §1B1.13, comm. n. 1(A)(i) (defining "terminal illness" to include diseases with an "end-of-life trajectory" and providing "end-stage organ disease" as an example of such).

### B. This Court Has the Authority to Reduce Mr. Kilgo's Sentence by Finding That He Meets the 30-Day Waiting Requirement

Under 18 U.S.C. § 3582(c)(1)(A), a defendant ordinarily must exhaust administrative remedies with the BOP or wait 30 days after submitting a request for compassionate release to the warden. 18 U.S.C. § 3582(c)(1)(A). Mr. Kilgo's case is ripe for review by this Court because it has been more than 30 days since he submitted his request to the Warden. Mr. Kilgo submitted his request on December 9, 2022 (See Exhibit 1). The effective filing date for this motion is Monday, January 9, 2023, which will be 32 days since the submission of his request.[4]

18 U.S.C. § 3582(c)(1)(A) gives defendants two alternative tracks to federal court. "[P]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *United States v. Alam*, 960 F.3d 831, 832, 834 (6th Cir. 2020) (emphasis added). "They must 'fully exhaust[ ] all administrative rights' *or else* they must wait for 30 days after the warden's 'receipt of [their] request.'" *Id.* at 833 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). The court further clarified that, for those prisoners who choose to "pursue administrative review," they are not required to complete it before coming

---

[4] January 7, 2023 is the 30th day since the submission of the request, and thus even using this date the motion is timely.

6

to federal court. *Id.* at 836. "[P]risoners have the option to go to federal court" if they pursue administrative review and it "comes up short (*or if 30 days pass*)." *Id.* (emphasis added).

Thus, the Sixth Circuit Court of Appeals has recognized that 18 U.S.C. § 3582(c)(1)(A) grants this Court jurisdiction to act, now that 30 days have passed since Mr. Kilgo's request to the warden for compassionate release. *Id.* For the reasons discussed above, time is of the essence in Mr. Kilgo's case, and because more than 30 days have now passed since his request to the warden, he now petitions this Honorable Court.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Kilgo's Sentence to Time Served

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. §3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Kilgo has end-stage brain cancer. When combined with the other Section 3553(a) sentencing factors, relief is warranted.

In this case, a reduction of Mr. Kilgo's sentence would not diminish the seriousness of the offense, nor would it present a risk to the public. Mr. Kilgo performed well on pretrial release and he was granted voluntary surrender. Mr. Kilgo maintained his sobriety and employment while on pretrial release (*See* Sentencing Memorandum electronically filed November 11, 2021 at docket 34). He is terminally ill and in a weakened state. He has family support who will care for him upon his release.

Mr. Kilgo presently has less than 12 months remaining to serve. He has served more than 50% of his sentence, which is "sufficient, but not greater than necessary" to satisfy the goals of sentencing under § 3553(a). Accordingly, Mr. Kilgo seeks an order reducing his sentence to time served.

## CONCLUSION

Mr. Kilgo is terminally ill. His terminal illness presents "extraordinary and compelling reasons" to grant his motion for compassionate release. Mr. Kilgo respectfully requests that this Honorable Court reduce his sentence to time served.

        Respectfully submitted,

        s/F. Arthur Mullins
        F. Arthur Mullins (0080483)
        Assistant Federal Public Defender
        Fifth Third Center, Suite 490
        1 South Main Street
        Dayton, Ohio  45402
        (937) 225-7687
        Art_Mullins@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

        s/F. Arthur Mullins
        F. Arthur Mullins